**SO ORDERED.**

**SIGNED this 10 day of October, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

BARRETT OAKES WELCH,                          CASE NO. 12-05082-8-JRL
                                              CHAPTER 11
      DEBTOR.

_____

### ORDER

This matter came before the court on the debtor's motion for an order authorizing him to execute a deed, to which the debtor's former spouse, Renee J. Welch ("Renee"), and the bankruptcy administrator have objected.[1] A hearing was held on October 2, 2012, in Raleigh, North Carolina.

### BACKGROUND

Barrett Oakes Welch ("debtor") filed his voluntary petition under chapter 11 of the Bankruptcy Code on July 12, 2012. The debtor and Renee separated on February 15, 2005, after more than twenty years of marriage. Following the dissolution of the marriage, the debtor brought

---

[1] Also before the court is the debtor's application for administrative expenses and a motion for relief from the automatic stay filed by Renee. Counsel for the debtor represented that the parties had reached an agreement regarding the debtor's application for administrative expenses; however, the matter will be continued pending the submission of the consensual agreement. The motion for relief from the automatic stay is held in abeyance, leaving the automatic stay in effect.

1

an equitable distribution proceeding against his former wife Renee, which is currently pending in Dare County, North Carolina ("domestic litigation").  Equitable distribution of the martial assets is the only issue remaining in the domestic litigation.

The debtor was a creditor in the chapter 11 bankruptcy proceeding In re Blue Water Land Development Co., LLC,  Case No. 08-00842-8-JRL, in the United States Bankruptcy Court for Eastern District of North Carolina, relating to the debtor's investment of approximately $1,900,000.00 in the business venture, Blue Water Land Development Company, LLC.  Prior to the petition date, the debtor received a disbursement of $1,600,000.00 from a mediated settlement in Blue Water, which was deposited with the Dare County Clerk of Clerk.

Sometime prior to March 26, 2006, the debtor's father, Aaron W. Welch, Sr., passed away leaving three sons: the debtor, Aaron W. Welch, Jr. ("Aaron") and John S. Welch ("John") (collectively "debtor's brothers" or "brothers").  His last will and testament, executed on October 2, 2003, named his three sons as equal recipients of his residuary estate, which included real property located at 5922 Carmel Lane, Raleigh, North Carolina, also described as Lot 45 North Bend Townhomes ("condominium").  Pursuant to the terms of the will, the debtor, Aaron and John each received an undivided one-third (1/3)  interest in the condominium.

On March 26, 2006, the debtor sold his one-third (1/3) interest in the condominium to Aaron and John for approximately $33,317.00.  After the parties agreed that the condominium was worth approximately $100,000.00, Aaron and John each delivered a check to the debtor for approximately one-half of the agreed upon purchase amount.[2]  Although the debtor received $33,317.00 for his

---

[2] The check the debtor received from Aaron was for $16,650.00 and the check received from John was for $16,667.00.

2

interest in the condominium, he never executed a deed conveying his one-third (1/3) interest to Aaron and John. Without a deed, the public record reflected the debtor, Aaron and John as holding an undivided one-third (1/3) owners of the condominium.

In early 2012, the debtor's brothers secured a third-party purchaser for the condominium; however, a search of the public records in North Carolina revealed that the condominium remained in the names of the debtor and his brothers. To consummate the proposed sale of the condominium, the debtor must execute a deed conveying his interest to his brothers. On August 15, 2012, the debtor filed the motion seeking an order authorizing the debtor to execute deed that is now before the court. The debtor asserts no right, title or interest in the condominium and merely wishes to facilitate the proposed sale by executing a deed conveying his interest to Aaron and John. Renee filed a objection, later joined by the bankruptcy administrator, to the motion contending that by authorizing the debtor to execute a deed six years after he sold his interest in the condominium, Aaron and John would be elevated to a higher priority than the remaining unsecured creditors in the debtor's bankruptcy.

## DISCUSSION

The Bankruptcy Code provides that the debtor's legal and equitable interests in property as of the commencement of the bankruptcy case constitute property of the estate, 11 U.S.C. §541(a)(1), and encompasses property interests transferred to the bankruptcy estate under the strongarm or avoidance powers of the trustee. 11 U.S.C. §541(a)(4); <u>Mid-Atlantic Supply, Inc. of Va. v. Three Rivers Aluminum Co. (In re Mid-Atlantic Supply Co.)</u>, 790 F.2d 1121, 1124 (4th Cir. 1986). Section 541(d) provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of

3

the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. §541(d). Property subject to a constructive or resulting trust in favor of another is generally excluded from the bankruptcy estate. 11 U.S.C. §541(d); In re Surplus Furniture Liquidators, Inc., 199 B.R. 136, 142 (Bankr. M.D.N.C. 1995). Although the Bankruptcy Code dictates what property interests constitute property of the estate and included in the bankruptcy estate, the resolution of the existence and nature of the debtor's interest in the property hinges on state law. Universal Coops., Inc. v. FCX, Inc. (In re FCX, Inc.), 853 F.2d 1149, 1153 (4th Cir. 1988).

At oral argument, the court indicated its tentative ruling that, with regard to real property, the debtor-in-possession could use the trustee's avoidance powers under §544 to defeat the interests of the beneficiaries of a resulting or constructive trust. See, e.g., In re Chase, Case No. 96-01286-8-JRL (Bankr. E.D.N.C. Aug. 21, 1997) (holding that the trustee, through his status as a bona fide purchaser for value, may prevail over the beneficiary of a constructive trust in real property under North Carolina law); In re Shearin Family Invs., LLC, 418 B.R. 584, 587 (Bankr. E.D.N.C. 2009); Bank of Vance v. Crowder, 194 N.C. 312, 315, 139 S.E. 601, 602 (1927) (disallowing a beneficiary of a constructive trust from recovering trust property where it has been transferred to a bona fide purchaser for value without notice). Without retreating from that ruling, the court after further review of the facts here, denies the motion because there is no basis for the imposition of a resulting or constructive trust or equitable lien under North Carolina law.

Constructive trusts, resulting trusts and equitable liens are equitable remedies recognized under North Carolina law in limited circumstances. "Trusts created by operation of law are classified into resulting trusts and constructive trusts." Carcano v. JBSS, LLC, 200 N.C. App.

162, 170, 684 S.E.2d 41, 49 (2009). Fulp v. Fulp, 264 N.C. 20, 140 S.E.2d 708 (1965), sets forth the requirements for the imposition of a resulting or constructive trust under North Carolina law:

> [A] resulting trust arises, if at all, in the same transaction in which the legal title passes, and by virtue of consideration advanced before or at the time the legal title passes. . . . A constructive trust, on the other hand, arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship.

264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965).  A constructive trust is a remedial device imposed by "[c]ourts of equity . . . to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Sara Lee Corp. v. Carter, 351 N.C. 27, 35, 519 S.E.2d 308, 313 (citation and internal quotation marks omitted); Roper v. Edwards, 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988).[3] Constructive trusts are "remedial device[s] . . . used wherever specific restitution in equity is appropriate on the facts[;]" Roper, 323 N.C. at 465, 373 S.E.2d at 425 (citation omitted, emphasis in original), and "arise[] independent of any actual or presumed intention of the parties and is usually imposed contrary to the actual intention of the trustee." Bowen v. Darden, 241 N.C. 11, 14, 84 S.E.2d 289, 292 (1954).  On the other hand, a resulting trust arises "when a person becomes invested with title to real property under circumstances which in equity obligate him to hold the

---

[3] In Roper, the North Carolina Supreme Court stated that a constructive trust "prevent[s] the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." 323 N.C. at 465, 373 S.E.2d at 425.  Inequitable conduct by a party falling "short of actual fraud will give rise to a constructive trust where retention of the property by the holder of the legal title would result in his unjust enrichment." Id. (emphasizing that "[f]raud need not be shown if legal title has been obtained in violation of some duty owed to the one equitably entitled." (citation omitted)).

title and to exercise his ownership for the benefit of another. . . . It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another." Shearin Family Invs., LLC, 418 B.R. at 587 (citations omitted).  The resulting trust must arise in the same transaction in which legal title passes, driven by the presumed intent of the parties. See, e.g., Strange v. Sink, 27 N.C. App. 113, 116, 218 S.E.2d 196, 198 (1975) ("Resulting trusts are established by equity for the purpose of carrying out the presumed intention of the parties."); Colwell Elec. Co. v. Kale-Barnwell Realty & Constr. Co., 267 N.C. 714, 720-21, 148 S.E.2d 856, 860-61 (1966); 2 Patrick K. Hetrick and James B. McLaughlin, Jr., Webster's Real Estate Law in North Carolina § 28.03 (Matthew Bender, 6th Ed. 2011).

An equitable lien "arise[s] from an agreement which shows an intention to charge some particular property with a specific debt or obligation or may be declared by a court of equity out of the general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." Shearin Family Invs., LLC, 418 B.R. at 587 (citation omitted); see Fulp, 264 N.C. at 24-25, 140 S.E.2d at 712-13 (imposing an equitable lien where one party wrongfully spends another's funds to improve his own land or expends his own funds to improve land which another has orally agreed to convey to him, but later refuses).

> An equitable lien is applied when one party wrongfully spends another's funds to improve his own land or when one party expends his own funds to improve land which another has orally agreed to convey to him, but later refuses to do so. It is the unjust enrichment of the title holder which supports the imposition of an equitable lien against his property.  Neither a written nor an oral contract is required to recover based upon this unjust enrichment.  It is enough that the plaintiff possess a good faith belief that he owns or will soon own an interest in the property or the improvements he makes to the property promised to him.  An equitable lien assists the plaintiff to assert his rights in the benefit of the improvements to the extent that they increased the value of the land.

Guy v. Guy, 104 N.C. App. 753, 759, 411 S.E.2d 403, 406-407 (1991) (citations and internal

6

quotation marks omitted).  In this case, there is no authority to impose an equitable lien on the debtor's interest in the condominium because there has not been any improvements, the benefit of which would unjustly enrich the debtor.  Because there is no authority to impose an equitable lien on the debtor's interest in the condominium, one does not arise under these facts.

North Carolina does not permit the imposition of a resulting or constructive trust in situations where legal title has not been transferred. Halverson v. Halverson (In re Halverson), 151 B.R. 358, 363 (M.D.N.C. 1993) (citation omitted); see, e.g., Anderson v. Anderson, 101 N.C. App. 682, 685, 400 S.E.2d 764, 765-66 (1991) ("While an agreement is not necessary to create a resulting trust, the resulting trust must arise in the same transaction in which legal title passes.  Consideration to support the resulting trust must have been paid before or at the time legal title passes, and not after legal title has passed." (citations and internal quotation marks omitted, emphasis in original)); 2 Patrick K. Hetrick and James B. McLaughlin, Jr., Webster's Real Estate Law in North Carolina § 28.03 ("[T]he resulting trust must arise *in the same transaction in which legal title passes.*"(emphasis added)) and § 28.04 ("Constructive trusts may be declared anytime a person *obtains legal title to property* by the violation of a fiduciary relationship or by neglect to discharge some duty or obligation with respect to the property in any other unconscientious manner." (emphasis added)).

The debtor's reliance on Surplus Furniture Liquidators, Inc., is misplaced.  In that case, the court refused to impose a constructive or resulting trust on personal property because it found "[m]issing . . . [the] essential requirement that there ha[s] been a transfer of title . . . under circumstances permitting the imposition of trust." 199 B.R. at 143; see Halverson, 151 B.R. at 363 (refusing to impose a constructive or resulting trust for equitably distributed property when

there has been no transfer of legal title due to a party's failure to execute the necessary documents).  In Halverson, a former spouse contended that she held equitable title to certain personal property of debtor as the beneficiary of a resulting or constructive trust because the debtor failed to execute documents required by the equitable distribution judgment. 151 B.R. at 362-63.  In refusing to recognize a constructive or resulting trust, the United States District Court for the Middle District of North Carolina held that neither can be imposed under North Carolina law "where legal title has not changed hands[.]" Id. at 363.

      The evidence in this case fails to establish either a resulting or constructive trust because as in Surplus Furniture Liquidators, Inc. and Halverson, there was no transfer of title under circumstances allowing the court to impose either type of trust on the debtor's one-third (1/3) interest in the condominium. Surplus Furniture Liquidators, Inc., 199 B.R. at 143; Halverston, 151 B.R. at 363.  By failing to execute a deed conveying the debtor's interest to Aaron and John, there was no transfer of legal title to the condominium.  In the absence of such a transfer, the court cannot impose a constructive or resulting trust on the debtor's interest. Id.; see Fulp, 264 N.C. at 22, 140 S.E.2d at 711 (holding evidence, established by the plaintiff, insufficient to warrant imposing a resulting or constructive trust in real property because the "defendant acquired no title to realty with the use of plaintiff's money.").  Furthermore, the debtor failed to show the existence of any agreement, intent, fraudulent conduct, confidential relationship or other circumstance that would, under North Carolina law, impose a resulting or constructive trust.  To the contrary, all the evidence shows that the failure to execute a deed consummating the purchase of the debtor's one-third (1/3) interest in the condominium was simply an oversight.

## CONCLUSION

Based on the foregoing, debtor's motion for authorization to execute deed is **DENIED.** The condominium may be sold, with each of the debtor's brothers entitled to one-third (1/3) share of the proceeds. Both the debtor's brothers have claims in the debtor's bankruptcy case, which may include the amounts paid to the debtor for his interest in the condominium and for the debtor's pro-rata share of any expenses and real property taxes paid by the debtor's brothers over the past six years.

## END OF DOCUMENT